THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOYSPRING HOLDINGS, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>COSY TRADING CO., LTD., dba ZMDRT,<br>a Hong Kong Limited Liability Company,<br>and<br>GAOMISHILAERFUDIANZISHANG<br>WUYOUXIANGONGSI dba ZXJYDBT, an<br>unknown Chinese entity,<br><br>                    Defendants. | **MEMORANDUM DECISION AND<br>ORDER GRANTING [24] PLAINTIFF'S<br>MOTION FOR DEFAULT JUDGMENT<br>AND PERMANENT INJUNCTION**<br><br>Case No. 2:25-cv-00298-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Plaintiff Joyspring Holdings, LLC's ("Joyspring") Motion for Default

Judgment and Permanent Injunction against Defendants Cosy Trading Co., Ltd., dba ZMRDT

("Cosy Trading"), and Gaomishilaerfudianzishangwuyouxiangongsi dba ZXJYDBT

("ZXJYDBT") (collectively, the "Defendants").[1] Defendants have failed to appear or defend,

and default has been entered. For the reasons below, the court grants Joyspring's motion.

## BACKGROUND

Joyspring is an online retailer of natural supplements and vitamins for children.[2]

Joyspring has a federally registered "JOYSPRING" trademark and alleges that Defendants used

counterfeit product listings to sell products that resemble Joyspring's.[3]

---

[1] Mot. for Entry of Default J. and Permanent Inj. ("Mot. for Default J."), ECF No. 24, filed Aug. 11, 2025.
[2] Compl. 5, ECF No. 1, filed Apr. 16, 2025.
[3] *Id.* 2–3.





---

[4] The first image shows one of Joyspring's listings, and the second image shows one of Defendants' listings on Amazon. *See id.* Exs. A & F.

2

On April 16, 2025, Joyspring filed its Complaint, asserting one count of trademark infringement.[5] Joyspring alleges that Defendants caused Amazon to temporarily disable Joyspring's product listings by filing "dozens of false DMCA copyright infringement complaints."[6] Meanwhile, Defendants allegedly created counterfeit product listings using Joyspring's trademark and sold their counterfeit products through Amazon, which delivers goods throughout the United States.[7]

On May 23, 2025, the court converted its previously issued temporary restraining order against Defendants into a preliminary injunction.[8]

## DISCUSSION

Joyspring seeks default judgment, a permanent injunction, and attorneys' fees and costs. The court addresses each request in order.

## I.    Default Judgment

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."[9]

---

[5] *Id.* ¶¶ 25–44. The Complaint also included one count of DMCA Misrepresentation, but the Mot. for Default J. does not address that claim.

[6] *Id.* ¶16.

[7] *Id.* ¶¶ 17–19, 24.

[8] *See* Order Granting Mot. to Convert TRO to Prelim. Inj., ECF No. 20, filed May 23, 2025.

[9] *Deville v. Wilson*, 208 Fed. App'x 629, 631 (10th Cir. 2006 (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

A.    **Subject Matter Jurisdiction Exists and the Court Can Exercise Personal Jurisdiction Over Defendants.**

This court has subject matter jurisdiction over the action because Joyspring's claim arises under federal trademark law.[10] The question of personal jurisdiction is a closer one, however, because Defendants are foreign entities. The burden of proving that the court has personal jurisdiction rests on the plaintiff.[11] "In reviewing its personal jurisdiction, the court does not assert a personal [jurisdiction] defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment."[12]

1.    **The Court Can Exercise Personal Jurisdiction over Defendants Pursuant to Rule 4(k)(2).**

Joyspring contends the court may assert personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2).[13] "In limited circumstances, Rule 4(k)(2) allows courts to examine a defendant's contacts with the United States as a whole, as opposed to contacts with a particular state."[14] The Rule states that for "a claim that arises under federal law," serving a summons establishes personal jurisdiction if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws."[15] If these three elements are met, then the Rule "provides for federal long-arm jurisdiction."[16]

---

[10] Compl. ¶¶ 25–44; 15 U.S.C. §§ 1051 *et seq.* ("The Lanham Act"); 15 U.S.C. § 1121 (granting district courts original jurisdiction "of all actions arising under [The Lanham Act]").
[11] *See Melea, Ltd. v. Jawer S.A.*, 511 F.3d 1060, 1065 (10th Cir. 2007).
[12] *Williams*, 802 F.2d at 1203.
[13] Mot. for Default J. 5–11.
[14] *Compañia de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1282 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 2793.
[15] Fed. R. Civ. P. 4(k)(2)(A)–(B).
[16] *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1208 (10th Cir. 2020).

The first element, which requires that the claim "arises under federal law," is easily met here because Joyspring's claim of trademark infringement arises under federal law.[17]

The second element, known as the "negation requirement," requires that "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction."[18] Although a plaintiff typically must establish personal jurisdiction, "in the context of Rule 4(k)(2) that general provision would saddle the plaintiff with an extraordinary challenge in 'proving a negative many times over,' that is, demonstrating that the defendant is *not* subject to jurisdiction in each of the fifty states."[19] Instead, many federal courts, including the Tenth Circuit, place the burden on the defendant.[20] Thus, "a defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed."[21] Here, Defendants have not indicated they are already subject to jurisdiction in another state's court.[22] Therefore, this element is satisfied.

The third element requires that the exercise of jurisdiction comports with due process.[23] "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[24] "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial

---

[17] Fed. R. Civ. P. 4(k)(2); *see* The Lanham Act; *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 99 F.4th 1150, 1159 (10th Cir. 2024) ("The Lanham Act regulates and protects the use of federally registered trademarks in U.S. commerce.").
[18] Fed. R. Civ. P. 4(k)(2)(A).
[19] *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) (emphasis in original) (quoting *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009).
[20] *Compañía de Inversiones Mercantiles*, 970 F.3d at 1284.
[21] *Id.* (citation omitted).
[22] Mot. for Default J. 7.
[23] *See* Fed. R. Civ. P. 4(k)(2)(B).
[24] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

justice.'"[25] "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole."[26]

"In practice, this analysis takes the form of either general or specific jurisdiction."[27] "General personal jurisdiction means that a court may exercise personal jurisdiction over an out-of-state party for all purposes."[28] This type of jurisdiction is appropriate when corporations' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[29] JoySpring does not argue that the court has general personal jurisdiction over the defendants, so the court does not address general personal jurisdiction further.

In contrast, a court has specific jurisdiction over a defendant if "the suit arises out of or relates to the defendant's contacts with the forum."[30] To establish minimum contacts for specific jurisdiction, the defendant "must have 'purposefully directed its activities at residents of the forum state,'" and "'the plaintiff's injuries must arise out of the defendant's forum-related activities.'"[31] The contacts must stem from defendant's choices and not be merely "random, isolated, or fortuitous."[32]

---

[25] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[26] *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

[27] *Smith v. Rest. Depot*, No. 24-3056, 2024 WL 4235067, at *2 (10th Cir. 2024).

[28] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

[29] *Id.* at 904 (quoting *Int'l Shoe*, 326 U.S. at 317).

[30] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted).

[31] *Old Republic Ins.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1239–40 (10th Cir. 2011)).

[32] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

### a. Defendants Purposefully Direct Activities at the United States.

Here, the contacts between Defendants and the United States meet the purposefully directed element. Defendants are selling counterfeit products on Amazon, a U.S. company, to U.S. customers.[33] Defendants have also filed dozens of false DMCA copyright infringement complaints against Joyspring's products with Amazon.[34] Finally, Defendants created duplicate product listings for counterfeit products using Joyspring's trademark and product photos.[35] These contacts demonstrate that Defendants choose to directly engage with the U.S. marketplace, both in its filings with a U.S. company and in its advertisements to U.S. customers. Thus, Joyspring has met the purposefully directed element of specific jurisdiction.

### b. Joyspring's Injuries Arise from Defendants' Activities.

Next, Joyspring meets the second element of specific jurisdiction because its injuries "arise out of" Defendants' contacts.[36] Joyspring's Complaint centers on Defendants' activities in the United States. In particular, Defendants sell counterfeit products on Amazon in the United States and their false DMCA complaints with Amazon form the basis of Joyspring's claims.[37]

### c. Jurisdiction over Defendants Would Be Fair and Reasonable

Finally, the remaining element that jurisdiction not "offend traditional notions of fair play and substantial justice" is met here.[38] When minimum contacts are met, defendants "must present a compelling case that the presence of some other considerations would render

---

[33] Mot. for Default J. 8.
[34] *Id.* 7–8.
[35] *Id.* 8.
[36] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).
[37] Compl. 2–3.
[38] *Dudnikov*, 514 F.3d at 1070 (10th Cir. 2008) (quoting *Int'l Shoe*, 326 U.S. at 316).

jurisdiction unreasonable."[39] Courts consider the following factors in weighing the

reasonableness of jurisdiction over a foreign defendant: "(1) the extent of contact with the forum

state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy,

(4) the probable situs of discovery proceedings, and (5) the nature of the defendant's activities

and its impact beyond [its] state's borders."[40]

    The first factor weighs in favor of jurisdiction. Defendants target U.S. customers

with counterfeit product listings on a U.S.-based company. Defendants have been on "fair

notice that their activities will render them liable to suit in a particular forum" when they

"purposefully directed [their] activities at residents of the forum."[41] Thus, they have

sufficient contacts in the United States.

    The second factor includes three sub-factors: "(a) the nature and extent and

interstate character of the defendant's business, (b) the defendant's access to counsel, and

(c) the distance from the defendant to the place where the action was brought."[42] The first

two subfactors weigh in favor of jurisdiction. First, Defendants are attempting to operate

an international business of counterfeiting products for sale in the United States. Second,

Defendants have not indicated they would be unable to obtain counsel here. The third

subfactor is less clear because Defendants' residence is unknown. But even assuming

Defendants, as Chinese entities, reside in China, the distance is not dispositive since "in

---

[39] *ProAxess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[40] *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015) (citing *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000)).

[41] *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (quoting *Burger King*, 471 U.S. at 470–77 (1985). *See also Peay*, 205 F.3d at 1213 ("Because defendants rendered benefits in Utah, they knew or should have known that a dispute over benefits could arise in Utah.").

[42] *Peay*, 205 F.3d at 1212.

this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened."[43] Indeed, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."[44] Therefore, the second element supports jurisdiction.

The third element weighs in favor of jurisdiction. Judicial economy would be best served by exercising jurisdiction. The court is now familiar with the matter and unaware of any other court with a claim to jurisdiction. Accordingly, this element favors jurisdiction.

The element regarding where discovery would likely take place is inapplicable. Plaintiffs are not seeking any discovery, and Defendants have not appeared.

Finally, the fifth factor supports jurisdiction. This factor considers "the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the border of [the defendant's] state of residence or business."[45] Here, the regulated activity is infringement of U.S. trademarks by selling counterfeit products in the United States. Accordingly, the infringing activities have a far-reaching impact that includes the United States.

In sum, the court may exercise personal jurisdiction over Defendants under Rule 4(k)(2) because Joyspring's claims arise "under federal law," Defendants have not established that they are "subject to the jurisdiction in any state's courts of general jurisdiction," and "exercising jurisdiction is consistent with the United States Constitution and laws."[46]

---

[43] *Id.* at 1213 (citations omitted).
[44] *Id.* at 1212–13 (quoting *Republic of Panama*, 119 F.3d at 947).
[45] *Id.* at 1212.
[46] Fed. R. Civ. P. 4(k)(2)(A)–(B).

**B.    Default Judgment Is Proper Against Defendants for Trademark Infringement.**

Default judgment is a drastic step.[47] "Strong policies favor resolution of disputes on their merits." But "a workable system of justice requires that litigants not be free to appear at their pleasure" and courts "must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedures."[48] Thus, a default judgment is appropriate to protect a diligent party from "interminable delay and continued uncertainty" about its rights "when the adversary process has been halted because of an essentially unresponsive party."[49] In this type of case, "[t]he default judgment remedy serves as such a protection."[50]

Here, despite notice and service of process several months ago, Defendants have failed to appear or defend against Joyspring's claims.[51] Accordingly, default has been entered.[52] When that occurs, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."[53] Thus, if the Complaint and any record evidence support Joyspring's claims and damages, it is entitled to judgment.

---

[47] *See, e.g.*, *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) ("[D]efault judgment is a harsh sanction.").

[48] *In re Rains*, 946 F.2d 731, 733 (10th Cir. 1991) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)).

[49] *Id.* at 732 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

[50] *Id.* at 733.

[51] *See* ECF Nos. 12 & 19.

[52] *See* ECF No. 25.

[53] *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citation omitted).

### 1.    Claim

Joyspring alleges that Defendants have infringed on their federally registered

JOYSPRING trademark with their counterfeit product listings and sale of counterfeit goods.[54]

Under the Lanham Act, trademark "infringement exists when a party's use of a mark

creates a likelihood of confusion."[55] To establish trademark infringement, Joyspring must prove

that (1) it "has a protectable interest in the trademark"; (2) Defendants have "used an identical or

similar trademark in commerce"; and (3) Defendants have "likely confused customers by using a

similar trademark."[56] The court addresses each element in turn.

### a.    Joyspring's trademark is protectable.

A federally registered trademark enjoys a presumption of protectability under the

Lanham Act.[57] It is undisputed that Joyspring owns the federally registered JOYSPRING mark.[58]

Thus, this element is met.

### b.    Defendants use Joyspring's trademark in commerce.

Joyspring alleges that Defendants use its trademark to advertise and sell counterfeit

goods.[59] "To invoke the protections of the Lanham Act, a plaintiff must show that the alleged

infringer used the plaintiff's mark 'in connection with any goods or services.'"[60] The undisputed

---

[54] Compl. 11.

[55] *Elevate Fed. Credit Union v. Elevations Credit Union*, 67 F.4th 1058, 1066 (10th Cir. 2023).

[56] *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014) (quoting *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

[57] *Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d 1245, 1250 (D. Utah Feb. 8, 2017) ("Registering the trademark entitles the owner to a presumption that its mark is valid.").

[58] Compl., Ex. B (listing JOYSPRING trademark as Reg. No. 5,265,435, registered on Aug. 15, 2017).

[59] *Id.* 11.

[60] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1051–52 (10th Cir. 2008) (quoting The Lanham Act).

evidence shows that Defendants post listings on Amazon to sell products under Joyspring's trademark.[61] Accordingly, this element is met.

### c.    Defendants' use of Joyspring's trademark is likely to cause confusion.

Likelihood of confusion is typically evaluated by a six-factor test in which the court considers: "(1) the level of care likely to be exercised by purchasers, (2) the strength or weakness of the senior mark, (3) the degree of similarity between the marks, (4) the intent of the alleged infringer in using the mark, (5) the similarity of products and manner of marketing, and (6) evidence of actual confusion."[62] "These factors are interrelated and no one factor is dispositive."[63] "But the degree of similarity is the most important factor."[64]

The first factor weighs against confusion. "If consumers generally exercise great care when choosing a product, they're less likely to experience confusion."[65] And "[a] consumer's care generally intensifies with the importance of the product."[66] Joyspring sells supplements and vitamins for children. Because consumers generally exercise great care when choosing products for their children, this factor weighs against the confusion element.

The next factor considers the strength of the senior mark. "The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion."[67] Strength of a trademark encompasses "two aspects: conceptual strength, or the mark's place on the spectrum

---

[61] Compl. Exs. C–G.
[62] *Elevate Fed. Credit Union*, 67 F.4th at 1072 (citing *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).
[63] *Sally Beauty*, 304 F.3d at 972.
[64] *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019).
[65] *Elevate Fed. Credit Union*, 67 F.4th at 1072.
[66] *Id.*
[67] *Sally Beauty*, 304 F.3d at 975.

of distinctiveness, and commercial strength, or its level of recognition in the marketplace."[68] Courts measure conceptual strength along a spectrum of distinctiveness.[69] Joyspring asserts that its trademark falls on the strong end of the spectrum "between arbitrary and fanciful because it is a compound word not otherwise in existence and is without intrinsic ties to the product or service."[70] Along this spectrum, "arbitrary" means "that the mark is a word or symbol already in common use that does not have any apparent relation to the product," and "fanciful" means "that the mark is a novel word or design that has been coined for the sole purpose of serving as a trademark."[71] Both words fall on the conceptually strong end of the spectrum.[72] Because "joy" and "spring" are two words not ordinarily combined, and the compound word "joyspring" does not otherwise exist, the trademark has conceptual strength. In terms of commercial strength, Joyspring alleges the "JOYSPRING" trademark has "found viral marketing and sales success online."[73] Accordingly, this factor favors Joyspring.

The Tenth Circuit views the third factor, which considers the degree of similarity between the marks, as "the most important factor."[74] "The degree of similarity between marks rests on sight, sound, and meaning."[75] Courts should not dissect marks to analyze them but rather "consider the marks as a whole as they are encountered by consumers in the marketplace."[76] Here, the marks appear identical. When comparing the counterfeit listings to Joyspring's, the two

---

[68] *Water Pik, Inc. v. Med-Syst., Inc.*, 726 F.3d 1136, 1151 (10th Cir. 2013).
[69] *Id.* at 1152.
[70] Mot. for Default J. 14.
[71] *Water Pik*, 726 F.3d at 1152.
[72] *Id.*
[73] Compl. ¶ 14.
[74] *Affliction Holdings*, 935 F.3d at 1115.
[75] *Sally Beauty*, 304 F.3d at 972.
[76] *Water Pik*, 726 F.3d at 1155 (internal quotation marks omitted).

marks are indistinguishable. Thus, the similarity between the marks weighs heavily in favor of Joyspring.

The remaining factors also favor Joyspring. Defendants' use of a mark and listings identical to Joyspring's speaks to their intent to misappropriate Joyspring's trademark and to the similarity of the products and manner of marketing. "Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion."[77] Finally, the actual confusion factor supports Joyspring. The fact that Amazon took down Joyspring's listings when Defendants filed false claims of infringement implies it was sufficiently confused by the identical listings. Accordingly, there is a high likelihood of confusion under these remaining factors.

In sum, the court finds that Defendants' use of Joyspring's trademark is likely to cause confusion.

Joyspring has demonstrated it "has a protectable interest in the trademark," Defendants have "used an identical or similar trademark in commerce," and Defendants have "likely confused customers by using a similar trademark."[78] Therefore, the court finds that Joyspring prevails on its claim of trademark infringement against Defendants.

## 2. Damages

The court now turns to the question of whether Joyspring's allegations support damages, and if so, in what amount. "[A] court may not enter a default judgment without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."[79] Here, no

---

[77] *Sally Beauty*, 304 F.3d at 973.
[78] *Derma Pen*, 773 F.3d at 1120 (quoting *1-800 Contacts*, 722 F.3d at 1238).
[79] *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983).

hearing is necessary because the damages are capable of mathematical calculation.[80]

Furthermore, the evidence before the court is sufficient to ascertain the damages "without

requiring a formal hearing."[81] Additionally, because Defendants have clearly chosen not to

appear and defend, any such hearing would serve no material purpose.

Joyspring requests statutory maximum damages in the amount of $2,000,000.[82] Under the

Lanham Act, a plaintiff may seek an award of statutory damages rather than actual damages and

profits.[83] And if the court finds that the "use of the countermark was willful," it may award up to

$2,000,000 per counterfeit mark.[84] "Statutory damages are particularly appropriate in a case,

such as this one, in which [the] defendant has failed to mount a defense or to participate in

discovery, thereby increasing the difficulty of ascertaining [the] plaintiff's actual damages."[85] A

court "has broad discretion in calculating damages, as the Lanham Act merely directs the [c]ourt

to impose the award that it 'considers just.'"[86]

"Consistent with this directive, courts factor in various considerations when synthesizing

an award of statutory damages, including the size and sophistication of the counterfeiting

scheme, deterrence interests, the defendant's level of engagement in the litigation, and the

defendant's efforts to evade or artificially reduce liability."[87] Additional factors include "the

---

[80] *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (affirming a default judgment that was entered without a hearing because the damages were capable of mathematical calculation).

[81] *Minden Pictures, Inc. v. Buzznick, LLC*, 2023 WL 2243177, at *4 (D. Utah Feb. 27, 2023); *see also id.* at n.35 ("[T]he hearing requirement can be satisfied by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it." (internal quotation marks omitted)).

[82] Mot. for Default J. 25.

[83] 15 U.S.C. § 1117(c).

[84] *Id.* § 1117(c)(2).

[85] *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

[86] *Acushnet Co. v. McMurdie*, 4:23-cv-00025, 2025 WL 754032, at *7 (D. Utah Mar. 10, 2025) (quoting 15 U.S.C. § 1117(c)(2)).

[87] *Id.*

expenses saved and the profits reaped," and "the revenues lost by the plaintiff."[88] Here, the

revenues lost by Joyspring weighs strongly against a maximum award because the record shows

only five sales and an account balance for Defendant ZXJYDBT of $66.55.[89] However, the

remaining factors support an award of more than the minimum in statutory damages. The size of

Defendants' counterfeiting scheme is unknown, largely because Defendants did not participate in

this case or provide evidence. But the fact that Defendants used Amazon, the world's leading

online retailer, to sell its counterfeit products suggests Defendants' scheme potentially could

have had a vast span.[90] As a result, this factor favors a significant award, as do the deterrence

interests in this case. The "important deterrent purpose served by statutory damages" is needed in

a case such as this where Defendants have profited, at virtually no expense, from stealing the

advertising and product development in which Joyspring has invested.[91] Joyspring avers that its

investment has been in the "tens of thousands of dollars."[92] Furthermore, Defendants' refusal to

participate in the litigation also weighs in favor of a substantial award to deter counterfeiters like

Defendants who are unwilling to cooperate with the justice system or end their unlawful conduct.

 For these reasons, Joyspring merits an award of damages about the statutory minimum.

But maximum statutory damages are not warranted. The record reflects only a small number of

---

[88] *Disney Enters., Inc. v. VidAngel, Inc.*, No. 2:19-mc-00122, 2019 WL 1080880, at *1 (D. Utah Mar. 7, 2019) (quoting *Prod. Partners, LLC v. Aucoin*, No. CV 09-7504, 2011 WL 13190160, at n.2 (C.D. Cal. Jan. 12, 2011)).

[89] Joyspring obtained this account information through discovery from Amazon, but it was unable to obtain similar sales information for Defendant ZMDRT. *See* Mot. for Default J. 18.

[90] Maria Gracia Santillana Linares, *The World's Largest Retailers 2025: Amazon Tops List of Global Retailers Ahead of Tariff Impact*, FORBES (June 12, 2025), https://www.forbes.com/sites/mariagraciasantillanalinares/2025/06/12/the-worlds-largest-retailers-2025-amazon-tops-list-of-global-retailers-ahead-of-tariff-impact/ [https://perma.cc/Y784-YMTN].

[91] *Malluk v. Berkeley Highlands Prods., LLC*, 611 F. Supp. 3d 1134, 1140 (D. Colo. Mar. 3, 2020); *see also Girlsongs v. 609 Indus., Inc.*, 625 F. Supp. 2d 1127, 1130 (D. Colo. 2008) ("[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers." (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)).

[92] Mot. for Default J. 18.

sales in the United States of a relatively inexpensive product.[93] Granted, Cosy Trading's sales

and profits are unknown, again due to Defendants' refusal to appear and defend. But even if the

court were to assume that Cosy Trading made many times the amount of ZXJYDBT, it would

still not warrant a $2,000,000 award. However, the totality of the above-mentioned factors

supports significant damages, particularly the obvious willfulness of the violations and the

dozens of false DMCA notices, which compound the fraud perpetuated here. It is this latter

element, the false DMCA notices, that particularly warrant a high statutory damages figure. It is

similar to stealing another person's property, passing it off as your own, and then complaining to

authorities that the victim is in fact the perpetrator. Consequently, the court finds Defendants

jointly and severally liable for $1,000,000 in statutory damages.[94]

## II.    Permanent Injunction

Joyspring requests a permanent injunction against further infringement by Defendants,

arguing that an injunction is necessary to protect its valuable intellectual property rights because

Defendants have committed willful infringement and refused to respond.[95]

"The Lanham Act empowers the district court to grant injunctive relief 'to prevent the

violation of any right of the registrant of a mark.'"[96] A party seeking a permanent injunction

must make four showings: "(1) actual success on the merits; (2) irreparable harm unless the

injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause

the opposing party; and (4) the injunction, if issued, will not adversely affect the public

---

[93] Mot. for Default J. 18; Fee Decl. of Brian Platt, ECF No. 25, filed Aug. 11, 2025.
[94] *See Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1318 n.2 (S.D.N.Y. 1989) (noting that "all persons and corporations who participate in, exercise control over, or benefit from a trademark infringement are jointly and severally liable").
[95] Mot. for Default J. 22.
[96] *Hetronic*, 99 F.4th at 1174 (quoting 15 U.S.C. § 1116(a)).

interest."[97] The court "does not apply any presumption" in a plaintiff's favor and all four elements must be established.[98]

Here, Joyspring has demonstrated Defendants' liability and established success on the merits. As to the second element, Joyspring contends that Defendants' infringement causes irreparable harm.[99] In the Tenth Circuit, "a plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'"[100] Irreparable harm may include the "loss of goodwill or competitive market position."[101] Joyspring has proved irreparable harm. Defendants' refusal to defend and participate in discovery has hindered Joyspring's efforts to ascertain complete numbers of counterfeit sales, but lack of precision is not fatal.[102] Instead, Joyspring's loss of goodwill and customers from Defendants' counterfeit advertising and products forms the warp and weft of this element. Therefore, Joyspring has established irreparable harm absent an injunction.

As to the final two elements, there is no hardship to Defendants "because a permanent injunction will merely prevent Defendants from engaging in further unlawful activity."[103] "Producing and selling counterfeit goods is illegal. There can be no cognizable harm to the

---

[97] *United States v. Uintah Valley Shoshone Tribe*, 946 F.3d 1216, 1222 (10th Cir. 2020) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)); *see also Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1164 (10th Cir. 2013) (affirming application of the four-factor test for preliminary injunction for trademark infringement).

[98] *Minden Pictures*, 2023 WL 2243177, at *5.

[99] Mot. for Default J. 15.

[100] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).

[101] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004).

[102] *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) ("A district court may find irreparable harm 'based upon evidence suggesting that it is impossible to precisely calculate the amount of damage plaintiff will suffer.'") (quoting *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990)).

[103] *DP Creations, LLC v. Reborn Baby Mart*, 2:21-cv-00574, 2022 WL 3108232, at *8 (D. Utah Aug. 3, 2022).

Defendants by the issuance of an order requiring them not to break the law."[104] Relatedly, a permanent injunction will not negatively affect public interest.[105] Rather, such an injunction will protect not only Joyspring but also potential customers. Furthermore, Defendants' "lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease." [106] For these reasons, the court grants Joyspring's request for a permanent injunction against Defendants.

## III.    Attorneys' Fees and Costs

Joyspring requests an award of its attorneys' fees and costs in the amount of $31,549.50.[107] The Lanham Act gives trial courts discretion to award reasonable attorney fees and "the costs of the action" to the prevailing party in "exceptional cases."[108] Although the Lanham Act does not define "exceptional," the Tenth Circuit has "determined it occurs when a trademark infringement is malicious, fraudulent, deliberate, or willful."[109] More recently, the Supreme Court addressed the Patent Act's identical "exceptional case" provision and concluded that an exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated."[110] "District courts may determine

---

[104] *Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv521, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008).
[105] *See Englert*, 711 F.3d at 1164 (affirming that an injunction to prevent further infringement would not "adversely affect[] the public interest").
[106] *Jackson*, 255 F. Supp. 2d at 1103; *Your True Nature, Inc. v. JF Show Store*, 1:23-cv-00107, 2024 WL 3340974, at *4 (D. Colo. June 21, 2024), *aff'd*, 711 F.3d 1153 (10th Cir. 2013).
[107] *Id.* at 20–21.
[108] *See* 15 U.S.C. § 1117(a).
[109] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000).
[110] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530–31 (2d Cir. 2018) (extending *Octane Fitness* to attorneys' fees determinations under the Lanham Act).

whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[111]

Here, the court concludes that an award of attorneys' fees and costs is warranted because of Defendants' "fraudulent, deliberate, and willful" infringement, their "unreasonable" nonparticipation in litigation, and their filing of fraudulent DMCA notices.[112] Defendants' blatant copying of Joyspring's trademark and listings merit an award of attorney fees to deter Defendants from such willful conduct. Having reviewed the attorneys and costs submissions, the court finds them reasonable. Therefore, the court awards Joyspring $31,549.50 in attorneys' fees and costs.

## ORDER

Accordingly, the court GRANTS Joyspring's Motion for Default Judgment as follows:

(1) The court ENTERS default judgment against Defendants and AWARDS Joyspring statutory damages of $1,000,000 against Defendants, jointly and severally.

(2) The court GRANTS Joyspring's request for a permanent injunction against Defendants.

(3) The court AWARDS Joyspring attorneys' fees and costs of $31,549.50 against Defendants, jointly and severally.[113]

---

[111] *Octane Fitness*, 572 U.S. at 554.
[112] *United Phosphorus*, 205 F.3d at 1232; *Octane Fitness*, 572 U.S. at 554; *see also Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008) (holding that willfulness is sufficient to make a case "exceptional").
[113] ECF No. 24.

Signed October 30, 2025.

BY THE COURT

_____

David Barlow
United States District Judge